# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| JOSEPH P. MIKELL, | : | PRISONER HABEAS CORPUS |
| Inmate # 1046208, | : | 28 U.S.C. § 2254 |
|     Petitioner, | : | |
| | : | CIVIL ACTION NO. |
|     v. | : | 1:10-CV-0735-TWT-JSA |
| | : | |
| WILLIAM M. TERRY, Warden, | : | |
|     Respondent. | : | |

## FINAL REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Joseph P. Mikell, seeks via 28 U.S.C. § 2254 to challenge the constitutionality of his March 6, 2000, conviction in the DeKalb County Superior Court for murder of his wife. Presently before the undersigned are the petition, as supplemented and amended [Docs. 1, 4 , 5, 11, and 12], Respondent Warden William Terry's answer-response with supporting brief and exhibits [Docs. 7 and 8], and Petitioner's traverse [Doc. 10].

### Introduction

The evidence linking Petitioner to the murder scene was limited. He was convicted based, in part, on the testimony of two witnesses, who saw a truck resembling his in the parking lot of the hotel where his wife's body was found. While

Petitioner raises a number of claims in this habeas corpus action, the most significant relates to certain evidence he claims his trial lawyer should have discovered and introduced to further his defense that (a) he was not at the hotel, and (b) someone else must have been with and murdered his wife.

Specifically, Petitioner proffers evidence from two new witnesses–hotel employees on duty on the day of the murder–who denied seeing Petitioner's truck that day. More importantly, the witnesses also would have stated that Petitioner's wife regularly visited the hotel with *other* men, and one of the witnesses even saw two *other* men (not the Petitioner) enter her hotel room on the day of the murder. Apparently, this was the last time any witness saw her alive.

Given the limited evidence at trial, this new evidence is troubling, as it may have been material to the jury. However, new evidence alone is not grounds for federal habeas corpus relief under the limited and deferential review afforded by 28 U.S.C. § 2254. Rather, Petitioner alleges and must prove a constitutional violation, that is, that his trial counsel was constitutionally ineffective for failing to discover and/or introduce this evidence at his trial.

In doing so, several procedural and substantive problems confront Petitioner. First, these claims were procedurally defaulted on direct appeal. Before his

2

conviction was final, Petitioner retained new counsel to make a motion for new trial and to appeal, and this new counsel failed to allege ineffective assistance of trial counsel relating to any of this "new" evidence. Thus, the Georgia state court that considered his habeas petition found that Petitioner's claims against trial counsel "are waived unless Petitioner can show that [appellate counsel's] failure [to raise them] rises to the level of ineffective assistance of counsel." [Doc. 8, Attach. 5, Final Order, Superior Court of Bibb County at 5]. The state court found no such ineffective assistance of appellate counsel and thus barred Petitioner from raising his claims against trial counsel for the first time in a habeas petition.

Second, on the merits, Petitioner must meet the difficult standard to show not only that his counsel performed deficiently, but also that but for the deficiency it would be reasonably probable to expect a different result, that is, acquittal.

Third, the Georgia courts considered and rejected Petitioner's claims in part based on the merits and in part based on the procedural bar. Thus, Petitioner must meet an extraordinarily onerous standard to show not just that these decisions were wrong, but that they reflected an unreasonable application of existing U.S. Supreme Court law and/or a clearly erroneous analysis of the facts.

3

The undersigned is troubled by aspects of trial counsel's performance, and some of the state court's findings. However, in the end, the Petitioner cannot surmount the onerous standard under § 2254. His "new evidence" claims against trial counsel are procedurally barred, and they also fail on the merits because any deficiencies by trial counsel were limited and not prejudicial. The state court was not unreasonable in denying all of Petitioner's other claims, including the "new evidence" claims against appellate counsel. Thus, as explained further below, the Court recommends that the petition be denied.

I.  Background

A.  Facts Elicited At Trial

The Georgia Supreme Court made the following findings of fact, which are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1):

> The evidence at trial shows that Barbara Mikell was picking up a $50 check from a friend in downtown Atlanta when her husband called to tell her that he would not be able to have lunch with her, as they had discussed. She became angry and said, "I'll guess I'll just go home," then slammed the cell phone down on the table. While driving south on I–75, she talked again with her husband at 2:17 p.m. Thirty minutes later, she checked into a motel off of I–20 in DeKalb County where she had met her husband once before their marriage. The motel was located 35 miles from their home in Butts County. She paid for the room with their joint credit card, a bill that he paid. Using her cell phone, Ms. Mikell called her husband's pager at 3:01 p.m. and 3:54 p.m., but he did not return the

4

calls. Records show that she did not communicate that day on her cell phone with anyone besides her husband.

A motel employee found Ms. Mikell's body the next morning around 11:00 a.m. Ms. Mikell was lying on her back with a pillow over her head, wearing her bra, shorts, and underpants; a check for $50 was stuck in her bra. Her blouse was draped over water glasses and a pitcher on the dresser with her purse, keys, glasses, cell phone, and pager still in the room. There were no signs of a forced entry, struggle, or sexual activity. The medical examiner testified that she had been shot three times in the head while lying or sitting on the bed in the position where she was discovered.

Asserting an alibi defense, Mikell testified that he worked the entire day driving a lowboy truck, a vehicle that transports equipment, for his employer E.R. Snell Contractor. He told his wife during their 2:17 p.m. conversation that he would be working late, and she said she would be going to visit her daughter. He admitted that he worked by himself from 3:45 to 6:00 p.m. and did not make or receive any calls on his cell phone between 2:48 p.m. and 5:05 p.m. During that time, he was moving equipment from a subdivision two miles off of I 20 in DeKalb County to a golf course off of Highway 78 in Gwinnett County. His supervisor paged him around 4:45, and Mikell radioed back from his truck 15 minutes later saying he was on I 285. The defendant owned several guns, but none was identified as the murder weapon, which the police never found.

Two motel residents told police that they saw a lowboy truck with the E.R. Snell logo in the parking lot behind the motel on the afternoon of May 18. Although one witness testified at trial that he had been mistaken about the date, the other witness testified that he had seen both the E.R. Snell truck and a red dump truck driven by the other witness that afternoon as he was entering his room.

AO 72A
(Rev.8/82)

In addition, the state presented evidence of a mid-day telephone call between Mikell and Sonja Brown, a friend and former mistress, on May 18. During their conversation, which lasted 34 minutes, they spent ten minutes discussing her arrest for driving under the influence and ten minutes discussing his relationship with his wife; he said Barbara was complaining earlier in the year about his long hours at work and he did not know whether they were going to get a divorce. Later Mikell asked Brown to tell his lawyer that their phone conversation had been only about Brown's DUI.

*Mikell*, 555 S.E.2d at 434-35.

Based on the above evidence, Petitioner was convicted by the jury on March 6, 2000, and was sentenced to life imprisonment. [Doc. 8, Attach. 13 at 46].

B. The New Trial Motion And Direct Appeal

Petitioner moved for a new trial on March 30, 2000. [Doc. 8, Attach. 13 at 49-61]. This motion related specifically to the court's admission of the evidence of Petitioner's extramarital affairs. After first excluding this evidence, the court during trial found that the Petitioner's attorney, Michael Waldrop, opened the door to the admission of the evidence when he questioned witnesses about the police's failure to process the rape kit and other physical evidence, and about the state of Petitioner's marriage. Thus, following the trial, Mr. Waldrop contacted attorney Bruce Harvey about representing Petitioner at a motion for new trial and on appeal. Mr. Waldrop very professionally suggested that new counsel should assess whether he, Mr.

6

Waldrop, had been ineffective with regard to opening the door to admission of the evidence of extramarital affairs. [Doc. 8, Attach. 11 at 58].

In preparation for the motion for new trial, Mr. Harvey read the trial transcript and spoke with Petitioner. [Doc. 8, Attach. 11 at 58]. Mr. Harvey's office prepared an amended motion for new trial, raising the following grounds:

1. the verdict is contrary to the law;

2. the verdict is contrary to the evidence;

3. the verdict is strongly against the weight of the evidence;

4. trial counsel was ineffective based on the following:

    a. counsel failed to object to improper testimony and evidence presented against Petitioner; and
    b. counsel opened the door to allegedly similar transaction evidence and harmful character testimony presented against Petitioner, which otherwise would not have been permitted at trial.

[Doc. 8, Attach. 13 at 58].

The trial court conducted a hearing on the motion for new trial on September 27, 2000. Mr. Waldrop, Petitioner's trial counsel, testified at the motion for new trial hearing. [Doc. 8, Attach. 26 at 27]. After the hearing, the trial court denied the motion for new trial. [*Id.* at 86].

7

Mr. Harvey appealed Petitioner's conviction and sentence to the Georgia Supreme Court, raising the following enumerations of error:

1. the trial judge committed harmful and prejudicial error by reversing his pretrial ruling in limine and allowing the state to introduce evidence of Petitioner's "bad character," being testimony of Petitioner's "sexual technique" in removing one woman's blouse before sex;

2. the trial judge committed harmful and prejudicial error by allowing the state to introduce improper "bad character" evidence of Petitioner's adulterous sexual liaisons with a non-relevant third party;

3. trial counsel was ineffective for opening the door to the above-referenced bad character evidence; and

4. the trial judge committed harmful and prejudicial error by denying Petitioner's motion for a directed verdict for lack of sufficient evidence.

[Doc. 8, Attach. 27 at 11].

The Georgia Supreme Court found that the evidence was sufficient to support Petitioner's conviction and that, because the bad character evidence was properly admitted on other grounds, trial counsel was not ineffective. *Mikell*, 555 S.E.2d at 434-36.

C. The State Court Habeas Action

On December 13, 2002, Petitioner, through new counsel Michael McIntyre,

8

filed a *habeas corpus* petition in the Tattnall County Superior Court, which action was subsequently transferred to the Bibb County Superior Court. [Doc. 8, Resp. Attach. 2]. In the petition, Petitioner alleged the following:

1.   Petitioner was denied the effective assistance of counsel at trial;

2.   Petitioner was denied the effective assistance of counsel at his motion for new trial;

3.   Petitioner was denied effective assistance of counsel on appeal;

4.   the evidence against Petitioner was insufficient to support a conviction;

5.   Petitioner was denied the right to be tried by impartial jurors due to jury misconduct;

6.   the prosecution failed to disclose exculpatory evidence to Petitioner;

7.   Petitioner was convicted pursuant to an improper jury charge;

8.   Petitioner was convicted due to prosecutorial misconduct;

9.   Petitioner was convicted as a result of discrimination in the selection of grand and traverse jurors;

10.  Petitioner was subjected to unlawful interrogation and unlawful search of his residence and vehicle;

11.  Petitioner was convicted pursuant to wrongly admitted bad character evidence of Petitioner regarding a "sexual technique;"

12.    Petitioner was convicted pursuant to wrongly admitted bad character evidence of Petitioner regarding an adulterous relationship;

13.    Petitioner's constitutional rights were violated when the trial court conducted proceedings in Petitioner's absence; and

14.    Petitioner's constitutional rights were violated when no record was made of certain proceedings in the trial court.

[Doc. 8, Attach. 5 at 1-2]. On June 24, 2009, the state habeas corpus court denied the petition. [*Id.* at 16]. On March 2, 2010, the Georgia Supreme Court denied Petitioner's application for a certificate of probable cause to appeal the denial of state habeas corpus relief. [Doc. 8, Attach. 8]. Petitioner filed a petition for a writ of certiorari in the United States Supreme Court, where it was denied. *See Mikell v. Benton*, 131 S. Ct. 135 (Mem) (2010).

Before denying the petition, the state habeas corpus court conducted an evidentiary hearing on December 18, 2007. Although petitioner raised numerous issues in the petition, his counsel's focus at the hearing was trial counsel's failure to introduce certain allegedly exculpatory evidence at trial and new trial/appellate counsel's failure to raise this as a ground for trial counsel's ineffectiveness. The omitted evidence fell into two categories: (a) testimony from two hotel employees, Bihari "Ben" Patel and Bobby Magby, which would have tended to show that

10

Petitioner's truck was not present at the hotel on the day of the murder and that the victim may have frequented the hotel with other men, and (b) testimony from a firearms expert, which would have tended to refute that the shooter switched barrels on the murder weapon, as the State theorized Petitioner did.

1.  The Testimony of Patel And Magby

The state habeas court did not describe in detail the omitted testimony of Patel and Magby, or the facts regarding trial counsel's knowledge of those witnesses. But the sworn affidavits provided by the witnesses in the state proceeding are in the record, as is the deposition and affidavit of appellate counsel and the testimony of trial counsel. [Doc. 8, Attach. 11 at 48 (Patel Affidavit); Doc. 8, Attach. 11 at 51 (Magby Affidavit); Doc. 8, Attach. 27 at 67 (Harvey Affidavit); Doc. 8, Attach. 10 at 60-112, Attach. 11 at 1-10 (Waldrop testimony)]. The records shows as follows.

(a)  Patel's Testimony

According to Patel's affidavit, sworn to in 2007, he and his wife managed the Howard Johnson's until 2003. [Doc. 8, Attach. 11 at 48, ¶ 2]. He remembered checking Mrs. Mikell into her room on the day of her murder, May 18, 1998. [*Id.* at ¶ 3]. He was familiar with her because she had "often" visited the hotel. [*Id.* at ¶ 4]. She had checked into the motel every two or three weeks, during the three or four

11

month period prior to her death. [*Id.*]. According to Patel, "[s]he was with men, but I didn't pay attention to who they were, as it was none of my business." [*Id.*]. But Patel stated "I never recall meeting or seeing her husband, Perry Mikell, at the hotel, during any of the times she checked in." [*Id.*].

Patel stated that both police investigators and defense investigators interviewed him and his wife prior to trial. [Doc. 8, Attach. 11 at 49, ¶ 5]. No investigator asked Patel about whether he knew Mrs. Mikell and/or whether she had frequented the hotel prior to her death. [*Id.*].

The gist of the pretrial questioning was whether he recalled seeing the E.R. Snell truck in the parking lot on May 18, 1998. As of when he swore to his affidavit in 2007, Patel apparently could not recall whether he saw such a truck or not that day. But he stated in his affidavit that he "would have had a clear memory at the time" he was interviewed, and that "whatever we said to them then would have been true and accurate." [Doc. 8, Attach. 11 at 49, ¶ 5]. According to Waldrop's testimony, Patel told the defense team in 1998 that he worked behind the desk of the hotel office all day, that the office has a direct view of the parking lot area, that he would have seen any E.R. Snell truck parked there, and that no such truck was parked there that day. [Doc. 8, Attach. 10 at 85-86].

12

(b)    <u>Magby's Testimony</u>

Magby's affidavit, sworn to in 2007, explained that he was a maintenance worker on duty at the hotel on May 18, 1998. [Doc. 8, Attach. 11 at 51, ¶ 2]. He observed Mrs. Mikell check into the Howard Johnson's on the afternoon of May 18, 1998. [*Id.* at ¶ 3]. Magby also stated that Mrs. Mikell was alone when she checked in and that she went straight to her room. [*Id.*]. This occasion was not the first time he had seen Mrs. Mikell check into the motel. [*Id.*]. According to Magby, he had seen Mrs. Mikell at the motel a few weeks before her death. [*Id.*].

Magby further stated that he observed a white pick-up truck towing a small utility-size trailer park in the motel parking lot, outside the office, parallel to the motel, and between the motel and the big shopping center across the street. [Doc. 8, Attach. 11 at 51, ¶ 4]. Two Caucasian males, neither of which looked like Petitioner, left the white pick-up truck and went to Mrs. Mikell's room. [*Id.* at 52 ¶¶ 5, 11]. They knocked on the door and were let into the room. [*Id.*]. The truck was still parked at the motel when he left for the evening approximately twenty minutes later. [*Id.* at ¶ 6].

Magby stated that he never saw the E.R. Snell truck parked anywhere around the motel on either May 18, or May 19, 1998. [Doc. 8, Attach. 11 at 52, ¶ 10].

13

According to Magby, he routinely walked around outside the building for his work, and that, if the truck had been there on either of those days, he likely would have noticed it. [*Id.* at ¶ 10].

> 2. Trial Counsel's Knowledge of Patel and Magby's Information and Attempts to Obtain Their Testimony

Trial counsel, Mr. Waldrop, testified at the state habeas hearing. He stated that he wanted to subpoena Patel as a witness at trial because Patel would have affirmatively stated that Petitioner's truck was not at the motel on May 18. [Doc. 8, Attach. 10 at 88]. Trial counsel testified that he never asked Patel about whether the victim had checked into the motel on prior occasions. [*Id.* at 99-100]. According to trial counsel, within a week of trial, he attempted to serve Patel and/or his wife with subpoenas, but was told that they were out of the country for an unknown period of time. [Doc. 8, Attach. 10 at 88]. Trial counsel testified that he took no further actions to secure Patel's presence at trial, and that he did not inform the trial court that he had a critical witness that he could not locate or what the witness would testify to if called as a witness at trial. [*Id.* at 89]. Trial counsel also testified that he did not seek a continuance in light of his inability to serve a subpoena on Patel and he did not make any effort to admit the information that Patel had told him about not seeing the truck

14

under a hearsay exception. [*Id.* at 89-90]. Lastly, trial counsel did not verify whether Patel and his wife actually left the country. [*Id.* at 101].

Trial counsel testified that he was told by the Patels and another witness, George Hightower, that Magby might have relevant information about the case. [Doc. 8, Attach. 10 at 86-87]. Trial counsel also testified that he knew Magby was present at the motel on May 18 but otherwise had no information about what Magby saw or knew. [Doc. 8, Attach. 10 at 93]. Trial counsel testified that he attempted to interview Magby on the date that he interviewed the Patels but was unable to locate him. [*Id.* at 92]. Trial counsel further testified that he sent his investigator back to the motel on a "couple" of occasions to attempt to interview Magby but the investigator was also unable to locate him. [*Id.*]. Trial counsel was generally aware of Magby's work schedule at the motel through the Patels. [*Id.*].

3. <u>Appellate Counsel's Efforts</u>

Appellate counsel, Mr. Harvey, stated in his deposition that he spoke to Petitioner and trial counsel during his preparation of the motion for new trial. Mr. Harvey prepared Petitioner's motion for new trial based on reviewing trial counsel's file, reading the trial transcript, and researching possible issues to raise based on that review. [Doc. 8, Attach. 27 at 73-76]. After reviewing this information, Mr. Harvey

15

raised what he identified as the most meritorious issues. [*Id.* at 78].

Mr. Harvey stated in an affidavit that the focus of the motion for new trial and the hearing on the motion was an ineffective assistance of counsel claim based on trial counsel's opening of the door to the admission of evidence of Petitioner's extramarital affairs. [Doc. 8, Attach. 11 at 58]. Mr. Harvey stated that he did not conduct any new investigation into any other issues in the case in preparation for the motion for new trial and that he did not attempt to locate or interview witnesses, other than trial counsel, Mr. Waldrop. [*Id.*].

### 4. The Firearms Expert

At the evidentiary hearing on the state habeas petition, Petitioner elicited testimony from Kelly Fite, a firearms expert, who testified that it would be nearly impossible to switch the barrel of one of Petitioner's guns with the barrel that actually fired the shots that killed the victim. [Doc. 8, Attach. 10 at 36-50]. Trial counsel testified at the hearing that Fite's testimony would have been helpful, but that he did not consider hiring an expert. [*Id.* at 95-96]. Trial counsel testified that he was aware of the crime lab report that excluded Petitioner's guns as the murder weapon, which he viewed as helpful, but that he became aware prior to trial that the state was going to present the testimony of the possible barrel swapping. [*Id.*]

16

5.     The State Court's Denial of Relief

The Superior Court of Bibb County issued a lengthy order denying relief.

Because it provides a useful summary of the facts, and because the reasonableness of

the state habeas court's determinations are at issue in this case, the Court quotes the

order at length below:

**A. Mr. Harvey did not perform deficiently in Mr. Mikell's post-trial proceedings.**

At his evidentiary hearing, and in his post-hearing brief, Petitioner focused his argument and presentation of evidence on alleged ineffectiveness of Mr. Harvey's representation during Petitioner's motion for new trial, arguing that Mr. Harvey failed to raise alleged instances of ineffective assistance on the part of trial counsel, Mr. Waldrop. Petitioner contends that trial counsel, Mr. Waldrop, was ineffective because: (1) he failed to adequately question Mr. Patel, who managed the Howard Johnson Motel where Ms. Mikell's body was found, and that Mr. Waldrop failed to secure Mr. Patel's presence at trial to give testimony; (2) Mr. Waldrop failed to locate and question Bobby Magby, a maintenance man at the Howard Johnson, who allegedly could have provided information beneficial to Petitioner's case at trial; and (3) Mr. Waldrop failed to put on testimony of a firearms expert to contradict testimony of the State's firearms expert that Mr. Mikell could have switched the barrel of one of his two pistols, and used that pistol to kill Ms. Mikell. Since Mr. Harvey did not raise any of these arguments on the motion for new trial, they are waived unless Petitioner can show that Mr. Harvey's failure to do so rises to the level of ineffective assistance of counsel. *Thompson v. State,* 257 Ga. 386, 339 S.E.2d 664 (1987).

**1.     Failure to present evidence of Petitioner's alibi defense to support ineffective assistance of trial counsel claim at motion for**

17

**new trial (Claims 1 & 2).**

Petitioner contends that Mr. Harvey failed to raise claims 1 & 2, noted above, because he was unaware of their viability, due to the fact that he did not conduct an independent factual investigation of Mr. Mikell's case. Therefore, the threshold question in determining whether Mr. Harvey provided ineffective assistance is whether a reasonable attorney in Mr. Harvey's place should have been aware of these claims, so that he could evaluate whether to raise them on the motion for new trial.

Petitioner argues based on *Strickland v. Washington* that Mr. Harvey had a duty to "make reasonable investigations into the underlying facts of the case." Petitioner argues that the duty to investigate requires appellate counsel in a criminal case to conduct an independent investigation of the facts of the case, rather than relying on the case file, trial transcript, and discussions with trial counsel and the defendant to develop viable claims that merit further investigation.

Georgia caselaw contradicts Petitioner's argument. The Georgia Supreme Court has held that an appellate attorney need not conduct an independent factual investigation in order to satisfy his duty to investigate. In *Head v. Ferrell*, 274 Ga. 399, 554 S.E.2d 155 (2001), the Supreme Court held that an attorney reasonably discharged her duty to investigate a claim that trial counsel was ineffective during the sentencing phase of defendant's case when appellate counsel obtained trial counsel's file, spoke to the defendant and members of his family, reviewed defendant's school records, subpoenaed other records, and obtained a mental health examination of defendant to evaluate possible mitigating factors apparent to appellate counsel after the above review of the case. In *Hampton v. State*, 282 Ga. 490, 651 S.E.2d 698 (2007), the Georgia Supreme Court held that post-trial counsel rendered effective assistance without raising defendant's mental state during trial on appeal, when post-trial counsel's review of the transcript and conversations with defendant raised no indication that a viable mental health argument existed.

18

Petitioner's appellate counsel Mr. Harvey testified by deposition in this case that he prepared Petitioner's motion for new trial based on reviewing trial counsel's file, including discovery and the trial court record, reading the transcript of proceedings in the trial court, researching possible issues to raise based on that review, and discussing the motion for new trial with Petitioner and Petitioner's trial counsel. After reviewing this information, and specifically reviewing the trial transcript to identify errors to be raised in the motion for new trial, Mr. Harvey raised what he identified as the most meritorious issues.

Similar to the facts of *Head, supra*, Mr. Harvey discharged his duty to investigate Petitioner's case by thoroughly reviewing the case file and transcript and interviewing the Petitioner and trial counsel. And as in *Hampton, supra*, the investigation Mr. Harvey conducted did not discover evidence of trial counsel's alleged failure to present certain testimony to support Petitioner's alibi defense of which Petitioner now complains. Petitioner does not contend that either he or his trial counsel made Mr. Harvey aware of additional evidence in support of his alibi defense, and has not pointed to any part of the record that would have lead Mr. Harvey to discover such evidence. *See, Head,* 274 Ga. at 407 (suggesting appellate counsel is not ineffective when omitted testimony raised as error in habeas petition may not have been available to appellate counsel). Therefore, Mr. Harvey did not fail in his duty to investigate Petitioner's case at the appellate stage of proceedings. Furthermore, failure to call an alibi witness or secure that witness's appearance at trial does not necessarily constitute ineffective assistance of counsel. [FN1]. *Jackson v. State*, 262 Ga. App. 451, 585 S.E.2d 745 (2003); *Varner v. State*, 2009 WL 1313315 (Ga., April 28, 2009).

## 2. Failure to present testimony of an independent firearms expert.

Petitioner contends that his appellate counsel, Mr. Harvey, provided ineffective assistance at his motion for new trial by not raising the argument that trial counsel was ineffective for failing to put on testimony of an independent firearms expert. At the evidentiary hearing

19

in this case, Petitioner put on the testimony of Mr. Fite, a firearms expert, that it would be nearly impossible to switch the barrel of one of Mr. Mikell's guns with the barrel that actually fired the shots that killed Ms. Mikell. Petitioner's trial counsel, Mr. Waldrop, testified at the evidentiary hearing that he did not consider hiring a firearms expert such as Mr. Fite to testify at trial. Mr. Waldrop further stated that testimony such as Mr. Fite's would have been helpful in contradicting the State's barrel switching theory, which otherwise remained a possible theory to prove Mr. Mikell's guilt. At trial, Mr. Waldrop vigorously cross-examined the State's firearms expert and successfully obtained her testimony that neither of Mr. Mikell's handguns were the murder weapon, and that there was no evidence that the barrel of either weapon had been switched or tampered with.

Petitioner has put up no evidence or theory that omission of testimony by an independent firearms expert was a stronger argument for ineffective assistance of trial counsel than the argument actually raised by Mr. Harvey, that trial counsel was ineffective for opening the door to prejudicial evidence of Petitioner's adulterous affairs carried out at the Howard Johnson motel. *Shorter*, 275 Ga. 584. Furthermore, while Mr. Waldrop testified that testimony of another expert would have been helpful to Petitioner's case, a reasonable attorney in Mr. Waldrop's position could decide not to put on such testimony as a matter of trial strategy, since Mr. Waldrop did establish through testimony of the State's own expert that neither of Mr. Mikell's handguns was the murder weapon. Therefore, the record does not indicate that only an incompetent attorney would fail to raise the lack of independent expert testimony as ineffective assistance of counsel at the motion for new trial. *Id.*

**B. Mr. Mikell was not prejudiced by omission of testimony in his post-trial proceedings.**

As stated previously, to prove deficient performance in a claim of ineffective assistance of appellate counsel, a petitioner must prove either

that his appellate counsel failed to raise a claim that is clearly stronger than the claims actually raised, or that only an incompetent attorney would fail to raise the omitted claim. *Shorter*, 275 Ga. at 584. To prove prejudice, a petitioner must show "a reasonable probability that the outcome of the appeal would have been different." *Nelson*, 275 Ga. at 794.

Because Mr. Mikell claims that Mr. Harvey was ineffective in post-trial proceedings for failing to raise the ineffectiveness of his trial counsel, Mr. Mikell must first show that he was prejudiced by the actions of his trial counsel before he can claim he was prejudiced by Mr. Harvey's representation. Because Mr. Mikell has not shown that the omission of any of the "newly discovered" evidence prejudiced his case at trial, his claim for ineffective assistance of appellate counsel fails.

**1. Whether Mr. Mikell was at the Howard Johnson around the time of the murder.**

The Petitioner argues that the affidavits of Mr. Patel and Mr. Magby disprove the State's case that Mr. Mikell was seen at the Howard Johnson on the day of the murder. Mr. Patel and Mr. Magby both state in their affidavits that they did not see Mr. Mikell's H.R. Snell lowboy truck on the day of the murder. But at best, this testimony shows only that Mr. Patel and Mr. Magby did not see Mr. Mikell's truck; it does not prove that Mr. Mikell was not there on the day of the murder.

In *Hortman v. State*, 293 Ga. App. 803, 670 S.E.2d 99 (2008), the defendant appealed his convicted [sic] for making terroristic threats and harrassing telephone calls, arguing his trial counsel was ineffective for not presenting testimony of his mother that the defendant Mr. Hortman was at her house all day on the day the crime occurred, that he only had access to his cell phone and her home phone during that time, and that the [sic] neither phone showed any calls to the victim on that day. The Court of Appeals ruled that since Ms. Hortman was not with her son at all times on the day of the incident, her testimony could not prove the

defendant did not commit the crimes, but "merely shows that Hortman did not make the calls from his cell phone or his mother's home phone." *Id.* at 805. Therefore, there was not a reasonable likelihood that "the absence of this testimony impacted the outcome of the trial or prejudiced Hortman." *Id.*

In *Hortman*, the mother's testimony did not show that her son did not commit the crimes, but only that he did not use her phone or his cell phone. In this case, Mr. Patel's and Mr. Magby's testimony would not have proved that Mr. Mikell was not at the Howard Johnson on the day of the murder (e.g. by placing him at another location at a time that would show he could not have been present), but only that they did not see his truck there. Because the testimony of Mr. Patel and Mr. Magby (if believed by the jury) would not have affirmatively disproved the State's case at trial, there is not a reasonable likelihood that the absence of this testimony impacted the outcome of Mr. Mikell's trial. Therefore, Mr. Mikell was not prejudiced when Mr. Harvey did not raise the omission of this testimony as a ground for ineffective assistance of trial counsel at the motion for new trial.

**2. Whether Ms. Mikell had any reason to be at the Howard Johnson other than to meet Mr. Mikell.**

Mr. Mikell argues that the testimony of Mr. Patel and Mr. Magby could have disproven the State's case that Ms. Mikell had no reason to be at the Howard Johnson other than to meet Mr. Mikell because (1) Mr. Patel had seen Ms. Mikell at the Howard Johnson on previous occasions and (2) Mr. Magby saw two men enter Ms. Mikell's motel room. Such testimony might have been relevant to Mr. Mikell's case, but even if the jury chose to believe this testimony it would not have affirmatively shown that Mr. Mikell did not murder his wife, or create a reasonable suspicion that someone else murdered her.

In *Fortson v. State*, 280 Ga. 435, 629 S.E.2d 798 (2006), the defendant appealed his conviction for felony murder, arguing that his attorney was

ineffective for failing to put on testimony of an eye witness "who was about 15 feet away from Fortson but couldn't identify him." *Fortson*, 280 Ga. at 436 (punctuation omitted). The Georgia Supreme Court held that "even if the witness had testified exactly as Fortson claims, Fortson has not demonstrated that there is a reasonable probability that the outcome of his trial would have been different, as the testimony would not have exonerated him." *Id.* at 436-437. Therefore Fortson failed to prove the prejudice element of his claim. *Id.*

In this case, the omitted evidence would be relevant because it makes the State's position that Ms. Mikell had no reason to be at the motel other than to meet Mr. Mikell somewhat less likely to be the case. But this evidence would not exonerate Mr. Mikell, or prove that he was unable to commit the crime. As in *Fortson*, the omitted evidence might place an individual other than Mr. Mikell at the scene of the crime near the time the crime is thought to have occured, *Fortson*, 280 Ga. at 436, but it does not tend to show Mr. Mikell did not murder his wife, or raise a reasonable suspicion that someone else did. And as in *Hortman*, discussed above, the omitted testimony would not show Mr. Mikell was unable to commit the crime, *Hortman*, 293 Ga.App. at 805; it would only cast doubt on a certain theory of the events leading up to the murder.

In *Fortson, Hortman*, and Mr. Mikell's case, omitted evidence may have been relevant to the ultimate issue of guilt, but the omission does not show a reasonable probability that the evidence would have changed the outcome of the proceeding, because none of the evidence omitted tends to show that the defendant could not have committed the crime of which he was convicted. Because Mr. Mikell was not prejudiced at trial by the omission of this testimony, he was not prejudiced when Mr. Harvey did not raise it as a ground for ineffective assistance of counsel at the motion for new trial.

**3. Whether the shots that killed Ms. Mikell could have been fired by one of Mr. Mikell's .22 caliber handguns.**

23

Mr. Mikell argues that the testimony of Mr. Fite presented at his evidentiary hearing shows that if his trial counsel had put on independent expert firearms testimony at trial, he could have disproved the State's theory that one of his handguns could have been used to murder his wife if the barrel had been switched. At best, the testimony of an independent expert would have called into question the testimony of the State's expert, Ms. Davy, giving the jury the opportunity to believe either Mr. Mikell's or the State's expert testimony and creating a "battle of experts."

Instead of offering independent expert testimony, Mr. Mikell's trial counsel chose to rely on cross-examination of Ms. Davy to disprove the State's case. Cross-examination of Ms. Davy established that Mr. Mikell's handguns still had the original barrels, there was no evidence those barrels had ever been changed, and neither of Mr. Mikell's handguns could have fired the fatal shots with their original barrels. Furthermore, the murder was probably committed with an F.I.E. or Kimel handgun, with either low-quality or worn out rifling lands and grooves. This testimony, elicited from Ms. Davy by Mr. Waldrop's cross-examination, was very favorable to Mr. Mikell's case, but still left a question of fact for the jury to decide. Since independent expert testimony also would have left a question of fact for the jury to decide, and since Mr. Waldrop's tactics in cross-examining Ms. Davy was so effective for Mr. Mikell's case, a reasonable attorney could decide to rely on such cross-examination, as Mr. Waldrop did, instead of presenting independent expert testimony. *Watkins v. State*, 285 Ga. 355, 355 676 S.E.2d 196 (2009) (decision as to which defense witnesses to call is a matter of trial strategy and will not constitute ineffective assistance of counsel unless the decision is an unreasonable one that no competent attorney would make).

Therefore, because Mr. Waldrop was not ineffective at trial for omitting independent expert testimony, Mr. Mikell was not prejudiced in post-

24

trial proceedings when Mr. Harvey did not raise this as a ground for ineffective assistance of trial counsel.

## C. Other alleged grounds of ineffectiveness of appellate counsel at motion for new trial.

The Petition sets out a number of other specific errors allegedly committed by Mr. Harvey during the motion for new trial. However, Petitioner did not submit evidence or argument on these alleged errors at his evidentiary hearing or in his post-hearing brief. Because Petitioner has provided no evidence or theory leading to the conclusion that "the outcome of appeal would have been different" absent any of the allegedly incompetent acts or omissions of Mr. Harvey, *Nelson, supra*, Petitioner's allegations as to any additional errors during the motion for new trial fail to prove ineffective assistance of counsel.

## II.   INEFFECTIVE ASSISTANCE OF APPELATE [sic] COUNSEL ON DIRECT APPEAL

Petitioner asserts in ground three of his Petition that he received ineffective assistance of counsel from his appellate counsel, Bruce Harvey, during Mr. Harvey's representation of Petitioner on direct appeal. The Court reviews this claim according to the same standard for establishing ineffective assistance of appellate counsel set out in Division I, above.

At Petitioner's evidentiary hearing on his Application for Writ of Habeas Corpus, held by this Court on December 18, 2007, and in his post-hearing brief, Petitioner chose to focus his argument and presentation of evidence virtually exclusively on his claims that he received ineffective assistance of counsel at trial and on his motion for new trial. Petitioner did not attempt to show, nor did he show that the merits of any of the issues he claims Mr. Harvey should have raised on direct appeal outweigh the merits of the issues actually raised. Neither did Petitioner show that failure to enumerate any such error "was an

unreasonable [decision] which only an incompetent attorney would adopt." *Shorter, supra.* Finally, Petitioner has provided no evidence or theory leading to the conclusion that "the outcome of appeal would have been different" absent any of the allegedly incompetent acts or omissions of Mr. Harvey. *Nelson, supra.* Therefore, Petitioner's claim that he received ineffective assistance of appellate counsel lacks merit.

[Doc. 8, Attach. 5 at 5-14]

D. <u>The Federal Habeas Action</u>

On March 12, 2010, Petitioner, appearing *pro se*, filed the instant federal habeas corpus petition. [Doc. 1]. Petitioner subsequently filed an "amended" and a "supplemental" petition. [Docs. 4 and 5]. In total, these *pro se* submissions raise dozens of issues, many of which are vague and overlapping. In the main, Petitioner continues to focus on trial counsel's ineffectiveness vis-a-vis the introduction of evidence of Petitioner's affairs, trial counsel's ineffectiveness for not calling Magby, Patel and Fite as witnesses, and his appellate counsel's ineffectiveness for not including the latter in the new trial motion.

In all, Petitioner's initial petition raises the following grounds for relief:

1.  ineffective assistance of appellate counsel based on counsel's failure to:

    a.  properly investigate the case;
    b.  consult with Petitioner;
    c.  sufficiently investigate the issues for appeal;

26

      d.     properly preserve appellate issues and errors;

      e.     file a reply brief on direct appeal;

2.     ineffective assistance of trial counsel based on counsel's failure to:

      a.     sufficiently investigate Petitioner's alibi defense;

      b.     properly investigate the case;

      c.     secure exculpatory witnesses to testify on Petitioner's behalf;

      d.     consult and secure a firearms expert to rebut the state's expert witness;

3.     the evidence was insufficient to convict Petitioner; and

4.     Petitioner was subjected to unlawful interrogation because detectives forced him to answer their question after he had requested the aid of an attorney.

[Doc. 1].

Petitioner later filed a supplemental petition, raising the following grounds for relief:

1.     ineffective assistance of trial counsel based on the following:

      a.     counsel failed to properly investigate;

      b.     Petitioner's trial was never a "true adversarial proceeding;"

      c.     counsel failed to object to improper testimony and evidence presented against Petitioner;

      d.     counsel opened the door to alleged similar transaction evidence and harmful character testimony presented against Petitioner;

      e.     the jury was allowed to consider improper testimony and

27

evidence and to consider similar transaction evidence and harmful character testimony;

f. counsel failed to present evidence that would have impeached the testimony of prosecution witnesses;

g. counsel failed to investigate and present evidence concerning prosecution witnesses;

h. counsel failed to investigate and present evidence concerning potential defense witnesses who were not called at trial, including but not limited to Petitioner's prior girlfriends, Ms. Sandra Brown's husband, the victim's daughter, and a representative from the billing department of the credit card company that issued the credit card used by the victim to reserve the motel room;

i. counsel failed to adequately investigate the rape kit submitted by the crime lab, including potential evidence of recent sexual activity of the victim;

j. counsel failed to properly address the issue regarding the indictment against Petitioner–the indictment alleged that the murder occurred on May 19, 1998, and the evidence presented by the prosecution at trial showed the date of the victim's death as May 18, 1998;

k. counsel failed to invoke the rule of sequestration;

l. counsel failed to object when prosecution witness Brown brought out her diary while on the stand to determine when Petitioner contacted her;

m. counsel failed to properly object to hearsay at trial, particularly during the testimony of witness Brown;

n. counsel failed to properly object to speculation at trial;

o. counsel failed to request that the lead investigator who was assisting the prosecutor at Petitioner's trial not be allowed in the courtroom during the testimony of other witnesses;

p. counsel failed to object to a juror drafting a chronology over the weekend and bringing it to the jury room for deliberations the following Monday;

q. counsel failed to pursue a line of questioning regarding

28

why the time of death of the victim could not be determined;

r.     counsel failed to impeach prosecution witness Brown with her May 28, 1998, statement regarding her discussion with Petitioner on May 18, 1998, that the victim's daughter was abusing drugs;

s.     counsel failed to object to several instances of prosecutorial misconduct, including when the prosecutor repeatedly accused Petitioner of lying and referred to him as a "cold-blooded murderer" during his opening statement, when the prosecutor read statements made by witnesses to the police in full while examining witnesses on the stand, and when the prosecutor played a taped interview without first laying the proper foundation;

2.     ineffective assistance of counsel at the motion for new trial based on the following:

a.     counsel did not conduct an independent investigation of the case;

b.     counsel failed to adequately consult with Petitioner and failed to learn critical information concerning Petitioner's actual innocence defense;

c.     counsel failed to conduct an adequate investigation of the victim;

d.     counsel failed to conduct an adequate investigation of the jurors;

e.     counsel failed to conduct an adequate forensic investigation;

f.     counsel failed to argue that Petitioner was denied effective assistance of counsel at trial based on trial counsel's cumulative errors;

g.     counsel waived Petitioner's presence at the proceeding conducted at the end of the motion for new trial hearing regarding a correspondence that a juror sent to the trial

court;

3. ineffective assistance of appellate counsel for failing to raise all of the above grounds of ineffective assistance of trial counsel;

4. the evidence was insufficient to convict Petitioner;

5. Petitioner was tried by jurors who were not impartial and who were engaged in juror misconduct;

6. the prosecutor failed to provide Petitioner with exculpatory evidence prior to trial;

7. Petitioner's rights were violated based on the trial court's improper jury charge;

8. the prosecutor engaged in prosecutorial misconduct;

9. Petitioner's rights were violated as a result of discrimination in the selection of grand and traverse jurors;

10. Petitioner's rights were violated as a result of the unlawful interrogation of Petitioner and the unlawful searches of his residence and vehicle;

11. Petitioner's rights were violated when the trial court admitted evidence of bad character of Petitioner through testimony about a "sexual technique;"

12. Petitioner's rights were violated when the trial court admitted evidence of bad character of Petitioner through testimony concerning an adulterous relationship;

13. Petitioner's rights were violated when the trial court conducted proceedings in Petitioner's absence; and

14.     Petitioner's rights were violated when no record was made of certain proceedings during Petitioner's trial.

[Doc. 4].

Petitioner also filed an amended petition, raising the following grounds:

1.     ineffective assistance of appellate counsel based on counsel's failure to adequately investigate and present all available and meritorious claims for relief, including a winning claim of ineffective assistance of trial counsel; and

2.     trial counsel was ineffective for failing to investigate critical facts and present clear evidence to the jury exonerating Petitioner and completely undermining the State's case.

[Doc. 5].

II.  Standard of Review

A.  Claims Considered on the Merits in State Court

Under Title 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person being held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law.  28 U.S.C. § 2254(a). This power, however, is limited.  A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication resulted in a decision that (1) "was contrary to, or involved an

31

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"This is a 'difficult to meet,' *Harrington v. Richter*, 562 U.S. —, —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011), and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam) (citation and internal quotation marks omitted)." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1398 (2011). Furthermore, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.*

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court analyzed how courts should apply § 2254(d). First, the court evaluating a habeas petition under § 2254(d)(1) must determine the applicable "clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at 404-05; *see* 28 U.S.C. § 2254(d)(1). The decision by the state court is measured against the Supreme Court's precedent as of "the time the state court renders its decision." *Lockyer v.*

*Andrade*, 538 U.S. 63, 71-72 (2003).

Next, "[t]o determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Cullen,* 131 S. Ct. at 1399 (quoting *Williams*, 529 U.S. at 405).

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, the federal court must then determine whether the state court decision was an "unreasonable application" of clearly established federal law by determining whether the state court identified the correct governing legal principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of the petitioner's case. *Williams*, 529 U.S. at 412. This reasonableness determination is objective, and the federal court may not issue a writ of habeas corpus simply because it concludes in its independent judgment that the state court was erroneous or incorrect. *Id.* at 411. In other words, it matters not that the state court's application of clearly established federal law was incorrect, so

33

long as that misapplication was objectively reasonable. *Id.*; *see McIntyre v. Williams*, 216 F.3d 1254, 1257 n.4 (11th Cir. 2000).

Under Title 28 U.S.C. § 2254(e), the state court's determinations of factual issues are presumed correct unless the petitioner presents clear and convincing evidence that the state court determinations were erroneous. As Petitioner has made no showing as required by 28 U.S.C. § 2254(e)(2), no federal evidentiary hearing is permitted, and the case is now ready for disposition.

B. <u>Procedurally Defaulted Claims</u>

Federal habeas review is generally barred for a claim that was procedurally defaulted in state court, i.e., a claim "not resolved on the merits in the state proceeding" based on an "independent and adequate state procedural ground." *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977) (noting that it was consistent with United States Constitution for state procedural rule to require that alleged error "be challenged at trial or not at all").

> [P]rocedural default can arise in two ways. First, where the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred, <u>Sykes</u> requires the federal court to respect the state court's decision. Second, if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the

34

petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

*Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (citations omitted); *see also Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (noting that if (a) petitioner failed to exhaust state remedies and (b) state courts would now find his claims procedurally barred, "there is a procedural default for purposes of federal habeas regardless of the decision of the last state court to which the petitioner actually presented his claims"); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994) (holding that "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim").

This bar to federal habeas review may be lifted, however, if the petitioner can demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law, or (2) a fundamental miscarriage of justice, i.e., that he will remain incarcerated despite his actual innocence unless the federal court considers his defaulted claim. *See Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 488-89, 495-96 (1986).

35

To establish cause, the petitioner must show that some objective factor external to the defense impeded his or counsel's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).

To establish a fundamental miscarriage of justice, i.e., "that constitutional error has caused the conviction of an innocent person," a petitioner must present "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and he "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," *id.* at 327.

III. Discussion

    A. Ineffective Assistance of Trial Counsel Claims Raised on Appeal

Petitioner raises several claims of ineffective assistance of trial counsel, only three of which were raised at the first opportunity in the motion for new trial and on appeal. "Ineffective assistance of counsel claims are governed by the standard set

36

forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, a petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). Additionally, to establish prejudice, a petitioner must prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted). "Surmounting *Strickland*' s high bar is never an easy task." *Harrington*, 131 S. Ct. at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by *Strickland* and

37

§ 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 131 S. Ct. at 788 (internal citations and quotation marks omitted).

Petitioner raised on direct appeal the claims in Ground 1(c), (d), and (e) of his supplemental petition–that is, the claims relating to the admission of evidence of Petitioner's extramarital affairs and sexual "technique"–and the Georgia Supreme Court found that trial counsel was not ineffective. *Mikell*, 555 S.E.2d at 436. The Georgia Supreme Court found that, because this evidence was properly admitted on other grounds, trial counsel was not ineffective when he questioned witnesses in a way that opened the door to the alleged prejudicial testimony. *Id.*

The undersigned concludes that the decision of the Georgia Supreme Court was not "an unreasonable determination of the facts," especially "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Petitioner has not presented any facts that contradict those found by the Georgia Supreme Court.

The undersigned also finds that the decision was not contrary to and did not involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C § 2254(d)(1). Although the Georgia Supreme Court did not specifically cite to *Strickland* in its

38

decision, a state court does not have to cite to Supreme Court precedent, or even be aware of it, so long as neither its reasoning nor its result contradicts Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Parker v. Sec'y of Dep't of Corr.*, 331 F.3d 764, 775-76 (11th Cir. 2003).

The Georgia Supreme Court's reasoning and decision also does not contradict the Supreme Court's holding in *Strickland*. As held by the Georgia Supreme Court, "[b]ecause Mikell's claim of ineffective assistance of counsel is based on the trial court's ruling that defense counsel opened the door to the prejudicial testimony and we have affirmed the admission of the evidence on other grounds, . . . trial counsel did not provide Mikell with ineffective assistance of counsel by questioning witnesses about the failure to process the rape kit and other physical evidence or the state of his marriage." *Mikell*, 555 S.E.2d at 436. Therefore, Petitioner is not entitled to relief on his ineffective assistance of trial counsel claims in Grounds 1(c), (d), and (e) of the supplemental petition.[1]

---

[1] Relatedly, in addition to alleging ineffective assistance of counsel, Petitioner also alleges in grounds 11 and 12 of his supplemental petition that the trial court violated his due process rights in admitting the evidence of extramarital affairs. "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," *Alderman*, 22 F.3d at 1555, since the state court "has wide discretion in determining whether to admit evidence at trial, and may exclude material evidence when there is a compelling reason to do so." *Lynd*

AO 72A
(Rev.8/82)

*v. Terry*, 470 F.3d 1308, 1314 (11th Cir. 2006); *see also Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not vehicle to correct evidentiary rulings); *Boykins v. Wainwright*, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections). Where the petitioner, however, claims that the state court's evidentiary ruling deprived him of due process, "the habeas court asks only whether the error was of such magnitude as to deny the petitioner his right to a fair trial, i.e., whether the error 'was material as regards a critical, highly significant factor.'" *Baker v. McDonough*, No. 4:06-cv-00514-RH-AK, 2007 WL 4856858, at *6 (N.D. Fla. Nov. 27, 2007) (quoting *Alderman*, 22F.3d at 1555); *see also Kight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir. 1995) (state court evidentiary rulings reviewed only to determine whether error was of such magnitude as to deny petitioner right to fair trial).

Here, the admission of the testimony about a "sexual technique" and Petitioner's extramarital affairs did not deprive Petitioner of a fair trial. As found by the Georgia Supreme Court, Brown's testimony about her prior sexual relationship with Petitioner was relevant to prove identity and to show that Petitioner had followed a similar pattern in having a sexual rendezvous at the same motel. In addition, the appellate court found that the evidence of their prior sexual relationship would have been admitted anyway to explain their discussion about Petitioner's marriage on the day that his wife was killed and his later attempts to influence Brown's description of the call. Further, the admission of evidence that he engaged in sexual relations with another woman three weeks before and one week after his wife's death was properly admitted to impeach Petitioner's testimony that he had a good relationship with his wife and was not considering a divorce. [Doc. 8, Attach. 22 at 26, 68]. Thus, Petitioner's rights were not violated by the admission of this testimony, it did not render his trial fundamentally unfair, and he has not shown the state rulings on this subject to be unreasonable.

40

B. Ineffective Assistance of Trial Counsel Claims Premised On New Evidence

Petitioner also raises several ineffective assistance of counsel claims that were not raised on appeal. Petitioner raises numerous claims, the most substantial of which alleges that trial counsel was ineffective for not calling Patel and Magby as witnesses at trial, not locating or interviewing Magby at all, and not requesting relief from the Court when counsel learned that Patel was unavailable. Petitioner also criticizes trial counsel for not eliciting testimony from a firearms expert such as Fite.

However, because these claims were not raised in the new trial motion or on appeal, they are subject to the procedural default bar. The state habeas court made clear, "[s]ince Mr. Harvey did not raise any of these arguments on the motion for new trial, they are waived unless Petitioner can show that Mr. Harvey's failure to do so rises to the level of ineffective assistance of counsel." [Doc. 8, Attach. 5 at 5]. The state habeas court then went on to find no ineffective assistance by appellate counsel. [Doc. 8, Attach. 5 at 5-13]. Thus, having found the ineffective assistance of counsel claims against trial counsel vis-a-vis Magby and Patel to be procedurally barred, the state court never ruled on trial counsel's ineffectiveness.[2] Since "the last reasoned

_____

[2] In assessing the second prong of *Strickland* vis-a-vis Petitioner's allegation that new trial/appellate counsel was ineffective for not raising these claims, the state habeas court considered whether the omission of Patel's and Magby's testimony

opinion on the claim explicitly imposes a procedural default," the Court must respect

that decision, unless Petitioner establishes a ground to excuse his procedural default.

*Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

1.  The Lack of Cause

Petitioner argues that "cause" excuses his default, because his new

trial/appellate counsel's failure to preserve these ineffectiveness claims was itself

constitutionally ineffective.  The state habeas court considered appellate counsel's

actions and found, with extensive citation and discussion of pertinent cases, that

appellate counsel was not ineffective.  [Doc. 8, Attach. 5 at 4-14].  As discussed

further below, this Court cannot find the state court's decision in this regard to reflect

an unreasonable application of Supreme Court law or clearly erroneous interpretation

of the facts.  Thus, under the "cause and actual prejudice" standard, Petitioner cannot

make the threshold showing of "cause" to excuse his default.

2.  No "Fundamental Miscarriage of Justice"

Even without "cause," the Petitioner's default may still be excused if he were

---

prejudiced Petitioner at trial.  The state court found no such prejudice. [Doc. 8,
Attach. 5 at 9-13].  The state court made no findings as to whether trial counsel's
failure to discover and introduced the evidence was constitutionally deficient under
the first prong of *Strickland*.

to show a "fundamental miscarriage of justice," i.e., that he was actually innocent and "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence [that was omitted at trial because of a constitutional violation.]" *Schlup*, 513 U.S. at 327.

The state habeas court did not expressly discuss this issue, although it almost certainly would have found no "fundamental miscarriage of justice," since it found that Petitioner was not even prejudiced by the omission of Patel's and Magby's testimony. *See Kuenzel v. Commissioner, Alabama Dep't of Corr.*, 690 F.3d 1311, 1315 (11th Cir. 2012) (holding that the showing for actual innocence "is more than that showing required to establish prejudice."). Thus, if this Court were to find a "fundamental miscarriage of justice," that would conflict with implicit findings of the state court. Neither the statute nor precedents of which the undersigned is aware clarify the deference owed to the state court's findings, if any, in this situation.

However, it is unnecessary to resolve this legal question. Even assuming that no deference is due to the state court's implicit ruling, this Court would find no "fundamental miscarriage of justice."

To be sure, the evidence was material. Both Patel and Magby specifically refuted the presence of Petitioner's truck at the hotel that day. More importantly, in

43

the Court's view, both witnesses offered information strongly suggesting that the victim may have been with other men. Indeed, Magby went so far as to recall seeing two *other* men, not the Petitioner, arrive at the motel in a *different* truck, which was not the Petitioner's, and enter the victim's motel room. The next time the victim was seen–in the room that Magby had seen two other men enter–she was dead.

However, the state habeas court concluded, correctly, that this testimony "would not have proved that Mr. Mikell was not at the Howard Johnson on the day of the murder . . . ." [Doc. 8, Attach. 5 at 10]. Indeed, the Eleventh Circuit, when looking at "new evidence" to determine if a petitioner had met the "*Schlup* gateway" standard for proving actual innocence, also looks at the evidence in the light of whether it showed that the petitioner did not commit the crime. *See Kuenzel*, 690 F.3d at 1316-17. With this new evidence–Magby and Patel's statements–"Petitioner has failed to show that some reasonable jurors–considering this 'new evidence' with the evidence available at trial–would not still find Petitioner guilty beyond a reasonable doubt." *Id.*[3]

---

[3] While the state court was correct in concluding that this new evidence "would not have proved" Defendant's innocence, this Court does not necessarily agree with the state court's ruling that there could be no "prejudice" for purposes of *Strickland*'s second prong. Showing prejudice under *Strickland*, while onerous, is a lesser standard than showing actual innocence under *Schlup*, and only requires "a

AO 72A
(Rev.8/82)

While the new evidence would have been helpful to Petitioner, there remained more than sufficient evidence inculpating him, including witnesses who saw his truck at the hotel, telephone records suggesting that the victim was in communication only with the Petitioner in the hours before her death, records showing that the victim paid for the hotel room using the joint credit card that the Petitioner paid (which suggests that she was not attempting to keep the visit secret from him), testimony about the fight Petitioner and the victim had earlier that afternoon, the similarity between the Petitioner's sexual "technique" and that used with the victim, the evidence of Petitioner's affair, and his request to the mistress that she lie to the authorities about their conversation on May 18. While the new evidence was plainly material, in combination with all of this other evidence it cannot rise to the high standard required for the "*Schlup* gateway."

Accordingly, Petitioner has failed to meet the actual innocence or fundamental miscarriage of justice exception, and his ineffective assistance of trial counsel claims

---

reasonable probability" that the result would have been different. *Strickland*, 466 U.S. at 694. Because Petitioner had no burden to "prove" anything at trial–and because testimony about the victim last being seen entering her room with other men could have been very favorable to the defense–the Court cannot say that no prejudice occurred for purposes of *Strickland* with regard to this evidence. But for purposes of the *Schlup* gateway, this evidence does not prove Petitioner's innocence and is not so exculpatory as to require reasonable jurors to acquit.

45

that were not raised on appeal are procedurally defaulted in this Court.

3. <u>The Ineffectiveness Of Trial Counsel Claims Would Fail On The Merits</u>

In any event, even if the ineffective assistance of trial counsel claims were not procedurally defaulted and the Court could consider the merits of the claims, the Court finds that the omission of this evidence was not due to constitutionally defective performance.

Obviously, a lawyer's failure to investigate and discover exculpatory or mitigating facts may constitute ineffective assistance of counsel. *See, e.g., Code v. Montgomery*, 799 F.2d 1481, 1482 (11th Cir. 1986) (finding ineffectiveness where, in an armed robbery case where defense counsel asserted an alibi defense, counsel did not attempt to locate or contact any witnesses who could testify about defendant's whereabouts on the day in question). However, trial counsel's performance must be measured against what he knew or should have been expected to know at the time of his investigation. *See Rhode v. Hall*, 582 F.3d 1273, 1280 (11th Cir. 2009) ("We review counsel's performance from counsel's perspective at the time, to avoid the distorting effects of hindsight.") (citation and quotes omitted). Here, counsel did not know, and there is nothing in the record to suggest that counsel should have suspected, that hotel employees were so familiar with Ms. Mikell. Patel certainly did

46

not volunteer the information in his interview with the defense. While another lawyer might have asked those questions, it would have been more on a lark than in furtherance of a clear lead in the lawyer's investigation. Based on what the record shows he knew at the time, it was constitutionally acceptable performance for counsel, in interviewing Patel, to focus on what Patel saw that day in the parking lot, and to not think of asking the additional questions. Notably, Patel was interviewed after the murder not only by the defense, but also by the police, and *neither* set of investigators asked Patel whether Mrs. Mikell had visited the hotel on prior occasions. [Doc. 8, Attach. 11 at 49].

Moreover, with regard to Magby, trial counsel attempted to interview him, but was unable to locate him. While counsel obviously did not prioritize this effort, and apparently abandoned it after a few attempts, he also did not have any specific information suggesting that Magby would be a critical witness. Counsel did not know what Magby saw, if anything. Armed with hindsight, and Magby's 2007 affidavit, it is easier to second-guess trial counsel's failure to locate Magby. But hindsight does not establish a constitutional violation. Based on what counsel knew

47

at the time, and other evidence counsel had developed,[4] it was not constitutionally

deficient to decline to keep trying to find Magby and discover whether or not he had

relevant information.

The cases in which courts have found ineffective assistance for failure to

investigate show substantially less effort. In *Code*, for example, counsel presented

an alibi defense as his sole strategy, but failed to contact any of the alibi leads

supplied by his client, and did not even ask the one witness he contacted whether that

witness could supply an alibi. *Code*, 799 F.2d at 1484. In *Sullivan v. Fairman*, 819

F.2d 1382, 1391-92 (7th Cir. 1987), the Seventh Circuit found ineffectiveness where

trial counsel did not interview or present evidence from any of five eyewitnesses.

But, in that case, counsel knew, or should have known from police reports and other

discovery, that each of those witnesses made statements to the police tending to

exculpate the defendant. *Id.* Otherwise, *Sullivan* re-affirmed that the Sixth

Amendment does not require "that trial defense counsel must track down every lead

---

[4] Trial counsel investigated and developed impeaching information as to the two eyewitnesses who stated that Petitioner's truck was present at the hotel. [Doc. 5, Attach. 10 at 75-77]. Also, trial counsel developed and introduced alibi-like evidence, suggesting that based on Petitioner's known whereabouts on that day, it would have been logistically impossible for him to travel back and forth to the hotel in Atlanta weekday traffic in the meantime. [*Id.* at 78-79].

48

or must personally investigate every evidentiary possibility . . . ." *Id.*

Here, by contrast, the record lacks any indication suggesting that trial counsel should have been aware of the potential lead, i.e., that Magby and/or Patel would establish the victim's presence at the hotel with other men. And the record shows that counsel otherwise engaged in a reasonable investigation, interviewing and developing impeachment facts as to the State's witnesses, and putting on an affirmative alibi defense. Putting ourselves in the shoes of trial counsel at the time–which the Court must do–we simply cannot say his investigation was deficient for not happening to discover this information.

More questionable is trial counsel's failure to either secure Patel's testimony about not seeing Petitioner's truck, or to seek a continuance upon learning that Patel was unavailable. After all, trial counsel knew that Patel directly refuted the testimony of other witnesses that placed Defendant's truck at the hotel parking lot on the day of the murder.

However, even if this were deficient, the omission of this one aspect of Patel's testimony was not prejudicial. Patel not seeing Petitioner's truck by itself would have been of limited probative value. Patel's statement, even if believed, does not mean Petitioner's truck was never at the hotel that day. It simply means that

Petitioner's truck was not within Patel's view during the times he was paying attention to the parking lot. As observant an office manager as Patel might have been, Petitioner does not adduce credible evidence that Patel's eyes were glued to the entire parking lot during this entire time. By contrast, the statements from prosecution witnesses claiming to see the truck at the hotel that day, if believed by the jury, would be of far more probative value. All it took was a witness seeing the truck there for a moment to establish it was there. Patel's statement did not and could not necessarily refute that. To be sure, his testimony about the truck would have been helpful to Petitioner, but not sufficiently so to conclude that an acquittal would have been reasonably probable.

Petitioner faces several other obstacles to showing prejudice from the omission of this statement. While Patel recalled not seeing the truck on the day he was interviewed, immediately after the murder, we can only speculate that he would have had that same recollection on the day of trial nearly two years later. Indeed, he could not recall what he saw that day when interviewed for his 2007 affidavit. [Doc. 8, Attach. 11 at 49]. And while trial counsel could have been more diligent vis-a-vis Patel, we can only speculate as to whether trial counsel could have successfully secured his testimony. The record includes little information as to how much notice

50

counsel had of a trial date so as to be able to issue a subpoena, and whether and when Patel was even in the country to receive a subpoena. Further, while trial counsel could have asked the court for a continuance, we can only speculate as to whether that would have been granted, especially without any information about how long Patel would be absent.[5]

Thus, even if deficient, trial counsel's failure to do more vis-a-vis Patel's testimony was not sufficiently prejudicial as to warrant relief. The Court would find this pursuant to a *de novo* review, and certainly finds the state court's decision reasonable on this point.

Finally, Petitioner's claims relating to the new firearms expert testimony are the most easily rejected of his "new evidence" claims. The state court examined the record at length with regard to trial counsel's impeachment of the state's firearms expert, and found that counsel effectively established several "very favorable" facts that refuted the notion that one of Petitioner's known handguns was the murder weapon. [Doc. 8, Attach. 5 at 12-13]. The state court concluded from this that no

---

[5] Petitioner in his briefs before the state habeas court also suggested that trial counsel could have sought to introduce Patel's out-of-court statements to the defense investigator. But it is hardly reasonably likely that such blatant hearsay would have been admitted in the trial.

AO 72A
(Rev.8/82)

prejudice resulted from trial counsel not also calling Fite or some other defense expert. The state court's application of *Strickland* and interpretation of the facts in this regard was reasonable. Moreover, for the same reasons, Petitioner fails to even establish deficient performance on this basis by trial counsel. It would have been reasonable for counsel, having effectively made his point through cross-examining the state's witness, to leave it at that and not call yet more witnesses on this issue.

C. Ineffective Assistance of Appellate Counsel Claims Based on New Evidence

Petitioner brings highly similar claims against his new trial/appellate counsel, Mr. Harvey, principally alleging that Mr. Harvey should have discovered and pursued the ineffectiveness claims set out above with regard to trial counsel. For many of the same reasons explained above, the state court was not unreasonable in denying these ineffectiveness claims.

1. *Strickland*'s Performance Prong

The state habeas corpus court correctly identified *Strickland* as governing Petitioner's claims of ineffective assistance of motion for new trial and appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285, 287-88 (2000); *see also Temple v. Morton*, No. 06-15061, 2007 WL 2141823 (11th Cir. July 27, 2007) ("The Supreme Court has held that the *Strickland* analysis also applies to claims of

52

ineffective assistance of appellate counsel."). With regard to the performance prong of the *Strickland* analysis, the state habeas corpus court found that appellate counsel was not ineffective for failing to conduct an independent investigation. On the record before the Court, this was not unreasonable.

"[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Furthermore, "[t]he mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (quotation and citation omitted); *accord, e.g., Provenzano v. Singletary*, 148 F.3d 1327, 1333 (11th Cir. 1998). Also, "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).

Here, for all the reasons noted above, the most exculpatory evidence that trial counsel failed to elicit related to Mrs. Mikell's presence at the hotel with other men. But just as trial counsel was not ineffective for failing to discover this information, the same is even more true for appellate counsel. The state court reasonably analyzed

53

the limits of Mr. Harvey's duties to investigate and reasonably found that he fulfilled those duties here.

As for Patel's statements about the truck, the record is incomplete as to whether Mr. Harvey even knew about that interview, and, if he did, why he decided to forego raising the claim. This is not because Petitioner lacked the opportunity to develop this record. The state court afforded Petitioner, who was represented by counsel, a hearing and the opportunity to take discovery. Indeed, Petitioner's habeas counsel took testimony from both trial counsel and new trial/appellate counsel. But in these depositions, Petitioner failed to establish whether new trial/appellate counsel was provided any information about Patel's interview, and if so why he declined to raise the issue. In other words, the record is incomplete as to whether new trial/appellate counsel's failure to raise this issue resulted from oversight, or from a tactical decision made with full knowledge of the facts.

If anything, the record suggests that new trial/appellate counsel's selection of issues was tactical. According to his deposition testimony, he reviewed trial counsel's file, read the transcript of proceedings in the trial court, researched possible issues to raise based on that review, and discussed the motion for new trial with Petitioner and Petitioner's trial counsel. [Doc. 8, Attach. 27 at 73-76]. Then, after

54

reviewing that information, appellate counsel raised what he identified as the most meritorious issues. [*Id.* at 78].

Whether counsel's choice resulted from tactics or oversight is critical, because *Strickland* itself makes clear that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Assuming counsel was aware of all relevant facts–and the record adduced by Petitioner fails to establish otherwise–his decision as to what arguments to raise was the sort of quintessential tactical judgment that courts are loathe to second-guess. This may have easily been a tactical decision, since, as discussed above, and as the state court reasonably found, a witness's memory of not seeing a specific truck would not have been reasonably likely to lead to a different result.

Especially given the posture of this case, in which the Court must defer not only to counsel's tactical judgments but also the state court's determination, the Court cannot find ineffectiveness by new trial/appellate counsel.[6] Accordingly, Petitioner is not entitled to relief on his ineffective assistance of motion for new trial and

---

[6] The state habeas corpus court also reasonably found that new trial/appellate counsel was sufficiently effective despite not challenging trial counsel's failure to call a firearms expert. [Doc. 8, Attach. 5 at 8-9]; *see also*, *supra*, at 51-52.

appellate counsel claims.

2. *Strickland*'s Prejudice Prong

Although the state habeas corpus court found that appellate counsel's performance was not deficient under the first prong of *Strickland*, it also examined the prejudice prong in determining whether appellate counsel was ineffective. To determine whether Petitioner was prejudiced by appellate counsel's failure to raise the claims, the state court logically examined whether the omission of the evidence at trial prejudiced Petitioner. As the state court put it, "[b]ecause Mr. Mikell claims that Mr. Harvey was ineffective in post-trial proceedings for failing to raise the ineffectiveness of his trial counsel, Mr. Mikell must first show that he was prejudiced by the actions of his trial counsel before he can claim that he was prejudiced by [new trial/appellate counsel's] representation." [Doc. 8, Attach. 5 at 9]. The state habeas court went on to find no prejudice at trial, that is, that the omission of all of Patel's and Magby's testimony and expert testimony regarding the firearms, would not have been reasonably likely to lead to a different result. Thus, the court found that there was necessarily no prejudice on appeal.

For the reasons discussed at length above, the Court agrees that the state court's opinion was reasonable at least with regard to the omission of Patel's

testimony about not seeing the truck, and Fite's expert testimony. There was no prejudice from the trial counsel's failure to adduce this evidence and, therefore, also no prejudice from appellate counsel's failure to preserve an ineffectiveness claim. With regard to Magby's and Patel's statements about Mrs. Mikell, the Court finds no prejudice with regard to appellate counsel's failure to raise these issues either. This is not because the evidence itself was inconsequential, as the state court seems to have found. But, rather, for the reasons discussed above, because an ineffectiveness claim on these grounds would likely fail to show a deficient performance. Either way, there would have been no reasonably likelihood of relief had Mr. Harvey raised these claims in his motion for new trial and/or on appeal.

D. <u>Additional Ineffective Assistance of Appellate Counsel Claims</u>

Petitioner also argues that his motion for new trial/appellate counsel was ineffective for failing to raise "all of the above grounds" as well as several other issues. [Doc. 1, Ground 1, initial petition; Doc. 4, supplemental petition, Grounds 2(a)-(g), Ground Three; Doc. amended petition, Ground One]. These claims also fail. Other than the issues discussed at length above relating to Magby, Patel and Fite, the state habeas court found that Petitioner did not present evidence showing any ineffective assistance of motion for new trial or appellate counsel or showing that he

57

was prejudiced by any such deficiencies, and therefore denied all such claims. [Doc. 8, Attach. 5 at 13-14]. The undersigned has reviewed the record and concludes that the state court did not unreasonably apply *Strickland* or rely on a clearly erroneous determination of fact. Thus, Petitioner's remaining ineffective assistance of motion for new trial/appellate counsel claims are without merit.

    E. <u>Sufficiency of the Evidence Claim</u>

In Ground 3 of his initial and supplemental petition, Petitioner argues that the evidence was insufficient to convict him of murder. Evidence is sufficient to support a criminal conviction if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When examining an insufficiency of the evidence claim, the issue is not "whether the trier of fact made the correct guilt or innocence determination, but whether it made a rational determination to convict or acquit." *Herrera*, 506 U.S. at 402. A federal court must presume that the jury resolved all conflicts in the testimony in favor of the state. *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987).

Petitioner raised this claim on appeal, and the Georgia Supreme Court applied *Jackson v. Virginia* and found that the evidence was sufficient. *Mikell*, 555 S.E.2d

AO 72A
(Rev.8/82)

at 434-35. The undersigned concludes that the decision of the Georgia Supreme Court was not "an unreasonable determination of the facts," especially "in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Based on the evidence presented at trial, cell phone records showed that the victim only communicated with Petitioner on the day of the murder. [Doc. 8, Attach. 19 at 23]. Further, two motel residents told police that they saw the truck that Petitioner was driving, a lowboy truck with the E.R. Snell logo, in the parking lot behind the motel on the afternoon of May 18. [Doc. 8, Attach. 16 at 91, 114, Attach. 25 at 52, 63-66]. In addition, Petitioner also had a history of meeting women at this motel, including the victim. [Doc. 8, Attach. 16 at 125-26, Attach. 18 at 96]. Thus, the Georgia Supreme Court's determination of the facts was reasonable.

The undersigned also finds that the decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C § 2254(d)(1). The Georgia Supreme Court cited to *Jackson v. Virginia* and properly applied the law to Petitioner's case. Therefore, Petitioner is not entitled to relief on his sufficiency of the evidence claim.

AO 72A
(Rev.8/82)

F. <u>Procedurally Defaulted Claims</u>

Petitioner raised his claims in Ground Four of his initial petition and in Grounds Five through Ten, Thirteen, and Fourteen, of his supplemental federal petition in his state habeas corpus petition, and the state habeas corpus court held that the claims were procedurally barred under state law because Petitioner had not raised the claims at trial or on appeal. [Doc. 8, Resp. Attach. 5 at 15]. Since "the last reasoned opinion on the claim explicitly imposes a procedural default," the Court finds that Petitioner's claims are procedurally barred. *Ylst*, 501 U.S. at 803.

Petitioner's remaining claims of ineffective assistance of trial counsel–to the extent they allege matters other than the sexual misconduct evidence, and failure to adduce testimony from Patel, Magby and Fite–are also procedurally barred because Petitioner failed to raise the claims at his first opportunity at the motion for new trial, on appeal, or in his state habeas corpus petition.[7] Thus, the claims are unexhausted since they have never been presented for consideration in the state courts. When a petitioner has failed to present a claim to the state courts and "it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law

---

[7] This covers the litany of complaints that Petitioner outlines in Ground 2(a)-(d) of his initial petition [Doc. 1], Grounds 1(a), (b), (f)-(s) of his supplemental petition [Doc. 4], and Ground 2 of his "amended" petition [Doc. 5].

procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998). Here, Petitioner is barred from raising his remaining ineffective assistance of trial counsel claims in a second state habeas corpus petition under Georgia's successive petition rule in O.C.G.A. § 9-14-51, which requires that all claims be raised in a petitioner's initial state habeas proceeding. *See Coleman*, 501 U.S. at 735 n.1 (new claims are exhausted if procedurally barred under state law). Thus, the claims are procedurally barred.

To the extent that Petitioner argues as cause that his appellate counsel was ineffective for failing to raise the above claims on appeal, as discussed previously in this opinion, such a claim is without merit. *See Coleman*, 501 U.S. at 755 ("We reiterate that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation."). Petitioner also does not specifically argue that this default should be excused due to prejudice or that this Court's failure to consider the claims would result in a fundamental miscarriage of justice.

AO 72A
(Rev.8/82)

Accordingly, Petitioner's claims in Ground Four of his initial petition and in Grounds Five through Ten, Thirteen, and Fourteen, of his supplemental federal petition in his state habeas corpus petition and his remaining ineffective assistance of trial counsel claims are procedurally defaulted and cannot be considered.

## III. Certificate of Appealability

According to Rule 11 of the Rules Governing Section 2254 Proceedings for the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A prisoner satisfies this standard by demonstrating that reasonable jurists would find that the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has failed to make a substantial showing of the denial of a constitutional right as to most of his claims. Many of Petitioner's claims are procedurally defaulted in this Court, and the state court's findings on Petitioner's

AO 72A
(Rev.8/82)

remaining claims pass muster under § 2254(d) and the *Williams v. Taylor* analysis.

The one area in which the undersigned recommends granting a certificate of appealability is as to whether Petitioner is entitled to any relief on account of trial counsel's failure to adduce the testimony of Patel and Magby (including the information provided in their 2007 affidavits), and/or whether such claim is procedurally barred. The standards to allow appeal are met on these issues.

IV.  Conclusion

Based on the foregoing, **IT IS RECOMMENDED** that Petitioner Joseph P. Mikell's habeas corpus petition, as amended and supplemented, [Docs. 1, 4 , 5, 11, and 12] be **DENIED** and this action be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that a certificate of appealability be **DENIED** except as specifically delineated above.

The Clerk is **DIRECTED** to terminate the referral to the undersigned magistrate judge.

**IT IS SO RECOMMENDED** this 25th day of October, 2012.

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

63